UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DAIQUANA COLES,

     Plaintiff,

  v.

CITY OF ROCHESTER, ROCHESTER
PUBLIC LIBRARY,

     Defendants.

_____

**DECISION AND ORDER**

6:22-CV-06407 EAW

### INTRODUCTION

*Pro se* plaintiff DaiQuana Coles ("Plaintiff") brings this action asserting claims pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112-12117 ("ADA"), the New York State Human Rights Law, New York Executive Law § 290, *et seq.* ("NYSHRL"), and the City of Rochester Code, alleging that defendants the City of Rochester and Rochester Public Library ("Defendants") discriminated against her by failing to reasonably accommodate her disability and retaliated against her for complaining about discrimination. (Dkt. 25). Presently before the Court is a motion for summary judgment filed by Plaintiff (Dkt. 41) and a cross-motion for summary judgment filed by Defendants (Dkt. 52). For the reasons explained below, Plaintiff's motion for summary judgment is denied and Defendants' cross-motion for summary judgment is granted.

- 1 -

**PROCEDURAL HISTORY**

Plaintiff filed her complaint on September 26, 2022, asserting discrimination claims and related state and local human rights law claims.  (Dkt. 1).  Defendants filed an answer on June 5, 2023.  (Dkt. 7).  On September 28, 2023, the Court granted Plaintiff's motion for the appointment of counsel for the limited purpose of preparing an amended complaint and participating in mediation. (Dkt. 16).  On January 22, 2024, Plaintiff filed an amended complaint (Dkt. 25) and on February 20, 2024, Defendants filed an answer (Dkt. 31).

On March 12, 2025, Plaintiff filed a motion for summary judgment.  (Dkt. 41). Defendants moved for an extension of time to cross-move which was granted over Plaintiff's objection.  (Dkt. 44).  On April 9, 2025, Defendants filed their cross-motion for summary judgment. (Dkt. 52).  On April 15, 2025, Plaintiff filed a reply to her motion and opposition to Defendants' cross-motion.  (Dkt. 56).[1]  On May 22, 2025, Defendants filed a reply (Dkt. 62) and on May 29, 2025, with leave from the Court (Dkt. 59), Plaintiff filed a sur-reply (Dkt. 63).

**FACTUAL BACKGROUND**

The following facts are taken from Plaintiff's Statement of Undisputed Facts (Dkt. 41), Defendants' Counterstatement to Plaintiff's Undisputed Facts (Dkt. 52-9), Plaintiff's

---

[1]     To the extent that Defendants argue that Plaintiff's reply brief to her own motion for summary judgment should not be considered by the Court to also constitute Plaintiff's opposition to Defendants' motion for summary judgment (*see* Dkt. 62 at 3, 6), this argument is rejected.  Similarly, while Defendants criticize Plaintiff for not adhering to the page limits set forth in the Local Rules, in light of Plaintiff's *pro se* status, the Cout has considered all of her submissions.

Response to Defendants' Counterstatement of Undisputed Material Facts (Dkt. 56), and other evidence submitted by the parties.[2]

Plaintiff was employed by the City of Rochester as a Security Guard at the Rochester Public Library beginning on February 22, 2022. (Dkt. 41 at 14; Dkt. 52-9 at 2; Dkt. 56 at 78). Plaintiff was a probationary employee for the entire duration of her employment. (Dkt. 52-9 at 6; Dkt. 56 at 88). Her employment ended shortly after it started, in May of 2022. (Dkt. 41 at 14; Dkt. 52-9 at 2; Dkt. 56 at 78).

In or around March 27, 2022, Plaintiff disclosed to Ana Suro, her supervisor, that she had a diagnosis of autism and had difficulty staying awake at work. (Dkt. 41 at 14; Dkt. 52-9 at 2, 6; Dkt. 56 at 77-78, 88). In or around April 2022, an employee took a photograph of Plaintiff, which Plaintiff believes was circulated to other employees. (Dkt. 41 at 15; Dkt. 52-9 at 2; Dkt. 56 at 80). Plaintiff attended a meeting with Human Resources employees to formally report the taking of the unauthorized photo. (Dkt. 41 at 15; Dkt. 52-9 at 2-3; Dkt. 56 at 80). During that meeting, it was suggested that Plaintiff consider other positions. (Dkt. 41 at 15; Dkt. 52-9 at 3; Dkt. 56 at 81).

Plaintiff contends that she formally complained about discrimination in writing and verbally to Human Resources on April 14, 2022, but Defendants deny that Plaintiff's April 14 email put them on notice of unlawful or discriminatory conduct. (Dkt. 41 at 15; Dkt. 52-9 at 3; Dkt. 56 at 81). Plaintiff also maintains that Defendants never investigated her

---

[2]    Plaintiff's Statement of Undisputed Facts is not numbered sequentially and Defendants' Counterstatement mirrors that format. For ease of reference, the Court will instead cite to the page numbers reflected in the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

discrimination complaint but instead notified Ana Suro, her supervisor and subject of the complaint. (Dkt. 41 at 15; Dkt. 52-9 at 2; Dkt. 56 at 81-82). On April 20, 2022, Plaintiff spoke with Ana Suro and thereafter was provided with a reasonable accommodation form by Emily Walsh in Human Resources. (Dkt. 41 at 16; Dkt. 52-9 at 6; Dkt. 56 at 82). Plaintiff never made a formal request for accommodation or completed the reasonable accommodation form. (Dkt. 52-9 at 6; Dkt. 56 at 88).

On April 21, 2022, Plaintiff submitted a medical note from a medical provider to excuse her absence on April 21 and April 22. (Dkt. 41 at 16; Dkt. 52-9 at 3; Dkt. 56 at 82; Dkt. 41-2 at 140). The note indicated that additional information about the need for further absences would be provided following an appointment on the 22nd. (Dkt. 41 at 16; Dkt. 52-9 at 3; Dkt. 56 at 82; Dkt. 41-2 at 140). Although Plaintiff now acknowledges that the medical note contains a temporal limitation, at that time, "she reasonably believed this documentation excused her from work beyond those dates, pending resolution of her discrimination complaint." (Dkt. 56 at 82). On May 3, 2022, Defendants sent Plaintiff a letter informing her that if she did not return to work or provide additional medical documentation by May 11, 2022, she would be deemed to have resigned and removed from the City's payroll. (Dkt. 41 at 16; Dkt. 52-9 at 4; Dkt. 56 at 83; Dkt. 41-3 at 21). Plaintiff considers this to have been a pre-termination letter. (Dkt. 41 at 16; Dkt. 56 at 82). On May 10, 2022, Plaintiff sent an email to Library Director Patty Uttaro and City of Rochester Chief of Staff Tammy Mayberry complaining of discrimination on account of her disability. (Dkt. 41 at 16; Dkt. 52-9 at 4; Dkt. 56 at 83). The Chief of Staff forwarded the email to the Rose Nichols, the Director of the Department of Human Resource

Management, and Linda Kingsley, the City of Rochester's Chief Legal Officer. (Dkt. 41 at 16; Dkt. 52-9 at 4; Dkt. 56 at 83). Rose Nichols then forwarded the email to Emily Walsh. (Dkt. 41 at 16; Dkt. 52-9 at 4 Dkt. 56 at 83).

On May 11, 2022, Plaintiff went to the Rochester Public Library to speak with Ana Suro and complained that she was being discriminated against because of her disability. (Dkt. 41 at 16; Dkt. 52-9 at 4; Dkt. 56 at 83-84). After the meeting, Ana Suro filed a Workplace Violence Report and sent it to Emily Walsh. (Dkt. 41 at 16; Dkt. 52-9 at 4; Dkt. 56 at 84). Plaintiff also spoke to Emily Walsh, who emailed Rose Nichols about their meeting. (Dkt. 41 at 16; Dkt. 52-9 at 4-5; Dkt. 56 at 84). And after receiving the Workplace Violence Report from Ana Suro, Emily Walsh sent an additional email to her supervisor. (Dkt. 41 at 16; Dkt. 52-9 at 5; Dkt. 56 at 84).

On May 11, 2022, Defendants issued Plaintiff a termination letter. (Dkt. 41 at 16; Dkt. 52-9 at 5; Dkt. 56 at 85; Dkt. 41-3 at 24). The letter advised that the termination was "being taken in response to your failure to satisfactorily complete your probationary term in the position of Security Guard/Part-Time." (Dkt. 41-3 at 24). On May 12, 2022, Plaintiff submitted an additional medical note to excuse her absence from May 12, 2022 through May 24, 2022. ((Dkt. 41 at 16; Dkt. 52-9 at 5; Dkt. 56 at 85). Defendants contend that Plaintiff was terminated on May 11, 2022, but Plaintiff contends that she was terminated on May 17, 2022, when the termination was formally executed. (Dkt. 41 at 17; Dkt. 52-9 at 5 Dkt. 56 at 78, 85; Dkt. 41-3 at 25).

**DISCUSSION**

**I.      Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, it finds that no rational jury could find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quotation marks, citations, and footnote omitted).  A court's obligation to decide whether the movant is entitled to summary judgment is not extinguished by a party's failure to address an argument advanced by the movant.  *See, e.g.*, *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004) ("Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law.").

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  "In deciding a motion for summary judgment, the district court's

function is not to weigh the evidence or resolve issues of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002) (citing *Anderson*, 477 U.S. at 249). "In short, '[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . .'" *Id*. (quoting *Anderson*, 477 U.S. at 255); *see also Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (citation omitted)).

Where, as here, there are cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

In addition, "[w]here one party is proceeding *pro se*, the Court reads the *pro se* party's papers liberally and interprets them "to raise the strongest arguments that they suggest." *Thorne v. Lewis*, No. 3:19cv24 (VLB), 2021 WL 4324475, at *2 (D. Conn. Sept. 23, 2021) (quoting *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted)). Despite this liberal approach, allegations unsupported by admissible evidence "do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

## II.   Plaintiff's Claims

### A. Failure to Accommodate Disability in Violation of the ADA, NYSHRL, and City of Rochester Code[3]

"The ADA prohibits an employer from discriminating against an employee on the basis of a disability." *Price v. City of New York*, 558 F. App'x 119, 120 (2d Cir. 2014) (citing 42 U.S.C. § 12112(a)). "Discrimination may take the form of failing to provide 'reasonable accommodations to . . . an otherwise qualified individual with a disability.'" *Id.* (quoting *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008)). "A claim of disability discrimination under the [NYSHRL] is governed by the same legal standards

---

[3]   The City of Rochester Code defines a "reasonable accommodation" to include "[a]ctions taken which permit an employee, prospective employee or member with a disability to perform in a reasonable manner the activities involved in the job or occupation sought or held or which permit an employee's or a prospective employee's religious observance or practice; provided, however, that such actions do not impose an undue hardship on the business, program or enterprise of the entity from which action is requested." City Code § 63-2.  Plaintiff does not argue and the Court is not aware of any legal authority that would direct a finding that this provision provides greater rights than those set forth in the ADA or NYSHRL.  Further, it is not clear that the Rochester Code provides a right of action where an individual is seeking relief on the same facts in another court proceeding, as Plaintiff is here.  *See* City Code § 63-10(B),(D) (permitting "any person claiming to be aggrieved by an alleged discriminatory practice in violation of this chapter shall have a cause of action in any court of appropriate jurisdiction for injunctive relief, compensatory and punitive damages and such other remedies as may be appropriate" but further providing that "[n]o cause of action for violation of this chapter shall lie where the party aggrieved has initiated a civil action in any court based upon the same grievance which is the subject of the cause of action, unless such civil action has been voluntarily discontinued or withdrawn by the party aggrieved"); *see also Masters v. F.W. Webb Co.,* No. 03-CV-6280L, 2008 WL 4181724, at *14 (W.D.N.Y. Sept. 8, 2008) (dismissing claim brought pursuant to City of Rochester Code because "[t]he relief provided for by § 63 is clearly intended to be alternative, rather than additional to any other causes of action asserted by an aggrieved party based upon the same facts").

as govern federal ADA claims. . . ." *LaScala v. Guidehouse, Inc.*, No. 25-CV-2882 (JPO),
2026 WL 787829, at *8 (S.D.N.Y. Mar. 20, 2026).

Both ADA and NYSHRL claims are analyzed under the burden-shifting analysis set
forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Szewczyk v. Saakian*,
No. 21-672, 2022 WL 2037196, at *1 (2d Cir. June 7, 2022) ("NYSHRL claims are
evaluated under the *McDonnell Douglas* framework"); *McBride v. BIC Consumer Prod.
Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009) ("Claims alleging disability discrimination in
violation of the ADA are subject to the burden-shifting analysis originally established by
the Supreme Court in [*McDonnell Douglas*]."). Under this standard, "[a] plaintiff must
establish a prima facie case; the employer must offer through the introduction of admissible
evidence a legitimate non-discriminatory reason for the [adverse action] . . .; and the
plaintiff must then produce evidence and carry the burden of persuasion that the proffered
reason is a pretext." *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

In order for a plaintiff to put forth a prima facie showing of disability discrimination
in the context of a failure to accommodate claim, the plaintiff must demonstrate each of
the following:

> (1) plaintiff is a person with a disability under the meaning of the ADA; (2)
> an employer covered by the statute had notice of his disability; (3) with
> reasonable accommodation, plaintiff could perform the essential functions of
> the job at issue; and (4) the employer has refused to make such
> accommodations.

*Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 184 (2d Cir. 2006) (citation modified);
*Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 18 (2d Cir. 2015) ("To plead a failure-
to-accommodate claim, a plaintiff must allege that '(1) [he] is a person with a disability

under the meaning of the ADA; (2) an employer covered by the statute had notice of [his] disability; (3) with reasonable accommodation, [he] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" (quoting *McMillan v. City of N.Y.*, 711 F.3d 120, 125-26 (2d Cir. 2013))).  The same standard applies to Plaintiff's NYSHRL claim.  *Moukdad v. NYU Langone Health Sys.*, No. 25-CV-02939 (ER), 2026 WL 774270, at *7 (S.D.N.Y. Mar. 18, 2026) ("To state a failure to accommodate claim under the NYSHRL . . ., a plaintiff is required to show that: (1) the plaintiff is a person with a disability under the meaning of the NYSHRL . . .; (2) an employer covered by the statute had notice of the plaintiff's disability; (3) with reasonable accommodation, the plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." (quoting *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 405-06 (S.D.N.Y. 2017))).

In addition, "the ADA envisions an interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *McBride* 583 F.3d at 99 (quotations omitted).  "An employer engages in an interactive process by, for example, meeting with the employee who requests an accommodation, requesting information about the condition and what limitations the employee has, asking the employee what he or she specifically wants, showing some sign of having considered the employee's request, and offering and discussing available alternatives when the request is too burdensome." *Sheng v. M&TBank Corp.*, 848 F.3d 78, 87 n.3 (2d Cir. 2017).  But "generally, it is the responsibility of the individual with a

disability to inform the employer that an accommodation is needed." *Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 81 (2d Cir. 2020) (citation modified).

To sustain a claim based on an employer's failure to reasonably accommodate a disability, the plaintiff must still be able to perform the essential functions of his position with or without a reasonable accommodation. *See McMillan*, 711 F.3d at 126 ("In discrimination claims based both on adverse employment actions and on failures to accommodate, the plaintiff 'bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [him] to perform the essential functions of [his] employment.'" (quoting *McBride*, 583 F.3d at 97)). Stated differently, "[b]ecause 'a reasonable accommodation can never involve the elimination of an essential job function,' a plaintiff proposing an alternative arrangement (as opposed to a reassignment) still carries the burden of demonstrating that he can perform the essential functions of the original job." *Palmieri v. City of Hartford*, 947 F. Supp. 2d 187, 202-03 (D. Conn. 2013) (quoting *McMillan*, 711 F.3d at 127).

Defendants do not dispute that Plaintiff informed Ana Suro that she had autism but argue that she has not established that she is disabled within the meaning of the ADA, though they concede that her autism diagnosis would qualify for purposes of the NYSHRL. (Dkt. 52-9 at 1). But even if she had a qualified disability under both statutes, they dispute that they were on notice of it because Defendants did not receive any documentation or explanation about the extent or nature of Plaintiff's autism. Plaintiff contends that because she disclosed her autism diagnosis and explained that it affected her ability to stay awake

during the workday, she provided sufficient notice to trigger the requirement of an interactive process.  Plaintiff relies in part on *Brady*, 531 F.3d at 135, for this argument.

In *Brady*, the Second Circuit noted that "[g]*enerally,* it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed." *Id.* (quoting *Graves,* 457 F.3d at 184).  The Second Circuit went on to note that this practice is "consistent with the statutory and regulatory language, which speaks of accommodating 'known' disabilities," but that an exception to the general rule is appropriate in instances "in which an employer perceives an employee to be disabled but the employee does not so perceive himself" and concluded that "an employer has a duty reasonably to accommodate an employee's disability if the disability is obvious—which is to say, if the employer knew or reasonably should have known that the employee was disabled." *Id.*

The facts of this case do not support the application of this exception.  Although it is undisputed that Plaintiff shared with Defendants that she had autism, there is no evidence that Defendants were provided any information as to the nature of the diagnosis, how the diagnosis impacted Plaintiff's ability to perform her job, or any correlation between the diagnosis and Plaintiff's ability to stay awake during the workday in a manner that would amount to notice.  *Costabile*, 951 F.3d at 82 ("It is undisputed that Defendants knew Plaintiff was on an extended disability leave from work-related injuries.  But this alone is insufficient to plausibly allege notice that those injuries constituted a disability under the Act."); *Shaham v. Vertrax, Inc.*, No. 3:21-CV-00170 (MPS), 2023 WL 2600207, at *16 (D. Conn. Mar. 22, 2023) (concluding that plaintiff's disability was not obvious to employer based solely on plaintiff's disclosure about her health conditions because they

- 12 -

were "conclusory, lacking in context, and not supported by any diagnosis from a physician"); *Geer v. Gates Chili Cent. Sch. Dist.*, 577 F. Supp. 3d 147, 170–71 (W.D.N.Y. 2021) (rejecting plaintiff's argument that he fell within *Brady's* exception because although he informed his employer that he suffered from PTSD and was seeking therapy, "those few scattered references are insufficient to create a genuine issue of fact concerning whether defendants knew or should have known that he was disabled or that he needed some 'accommodation' to enable him to carry out his job duties"); *Monterroso v. Sullivan & Cromwell, LLP*, 591 F. Supp. 2d 567, 579 (S.D.N.Y. 2008) ("An employee's provision of medical information is an indispensable aspect of that interactive process and where an employee fails to provide documentation sufficient to allow an employer to assess the parameters of the employee's disability, ADA liability simply does not follow." (citation modified)).

Moreover, even assuming for purposes of the motion that Plaintiff was disabled within the meaning of the ADA and NYSHRL and that Defendants had notice of her disability, Plaintiff also has not established the third and fourth elements of her *prima facie* case:

> The Second Circuit has held that to make out a *prima facie* case of employment discrimination based on a failure to provide reasonable accommodation as required by the ADA, the plaintiff must show "either that [he] can perform the essential functions of the job without accommodation or that [he] can do so with reasonable accommodation and that the employer refused to make such an accommodation."

*Caruso v. Camilleri*, No. 04-CV-167A, 2008 WL 170321, at *23 (W.D.N.Y. Jan. 15, 2008) (alterations in original) (quoting *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 99 (2d

- 13 -

Cir. 1999)).  "In the context of the ADA, reasonable accommodation may include, *inter alia*, modification of job duties and schedules, alteration of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, 'reassignment to a vacant position.'"  *McBride*, 583 F.3d at 97 (quoting 42 U.S.C. § 12111(9)(B)).  However, "the ADA does not require employers to provide employees with the particular accommodation the employee requests 'so long as the accommodation provided is reasonable.'"  *Caruso*, 2008 WL 170321, at *23 (quoting *Fink v. N.Y.C. Dep't of Personnel*, 53 F.3d 565, 567 (2d Cir. 1995)).  Additionally, "the ADA does not require creating a new position for a disabled employee."  *Graves*, 457 F.3d at 187.  "An employee who cannot perform the essential functions of his job even with a reasonable accommodation has no claim under the ADA because he is not a qualified individual, and it is irrelevant that the lack of qualification is due entirely to a disability."  *Murray v. Rick Bokman, Inc.*, No. 99-CV-0015E(SC), 2001 WL 603698, at *6 (W.D.N.Y. May 24, 2001) (citation modified)).

"Although the term 'essential functions' is not defined by the ADA, regulations promulgated by the [EEOC] indicate that it encompasses 'the fundamental job duties of the employment position.'"  *McBride*, 583 F.3d at 98 (quoting 29 C.F.R. § 1630.2(n)(1)).  "In approaching this inquiry, '[a] court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position.'"  *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003) (quoting *D'Amico v. City of New York*, 132 F.3d 145, 151 (2d Cir. 1998)).

Here, it is evident that Plaintiff cannot perform all of the essential functions of a Security Guard position if she is unable to stay awake and she does not dispute that staying awake is an essential function of this position.[4] *See Jackan v. N.Y. State Dep't of Labor*, No. 97-CV-0483, 1998 WL 760266, at *9 (N.D.N.Y. Oct. 26, 1998) ("It is undisputed that plaintiff cannot climb ladders, work at heights, or perform other essential functions of the job without reasonable accommodation.  The plaintiff, therefore, must propose a plausible accommodation. . . ." (citation modified)), *aff'd*, 205 F.3d 562 (2d Cir. 2000); *see also Snowden v. Trs. of Columbia Univ.*, 612 F. App'x 7, 9 (2d Cir. 2015) (affirming summary judgment for the defendant where the plaintiff did not dispute that certain tasks "were essential functions of her position" and where "the undisputed facts support the district court's ruling . . . that there were essential functions of [the plaintiff]'s job that she could not perform").  In addition, if any reasonable accommodations were available that would permit Plaintiff to perform the essential functions of the position, it was incumbent upon Plaintiff to request such accommodations, which she did not do, nor did she even complete the reasonable accommodation paperwork that was provided to her.  Moreover, even now on the instant motions, the only potential reasonable accommodation that Plaintiff suggests is that her being permitted to draw or color while working may be a strategy that could help

---

[4]    Under the NYSHRL, the "employer, not the employee, has the pleading obligation to prove that the employee could not, with reasonable accommodation, satisfy the essential requisites of the job." *Baker v. Bridge Inc.,* 805 F. Supp. 3d 521, 548 (S.D.N.Y. 2025) (quoting *Brown v. N.Y.C. Dep't of Educ.*, 806 F. App'x 45, 49 (2d Cir. 2020)).  Here, it is not disputed by any party that staying awake is an essential function for a security guard position so the differing burden is not implicated.

her self-regulate and focus, but she has not explained how this would not impact the essential functions of the job of a security guard and Defendants argue credibly that it would. This is fatal to her claim. *Harris v. City of N.Y. Dep't of Health*, No. 24-CV-4348 (PKC) (SDE), 2026 WL 710201, at *12 (E.D.N.Y. Mar. 13, 2026) ("An employer's failure to engage in the interactive process can form the basis for a failure-to-accommodate claim as long as there was a reasonable accommodation that would have enabled the employee to perform the essential functions of [their] job." (citation modified)); *Baker*, 805 F. Supp. 3d at 549 ("Plaintiff's arguments regarding the interactive process cannot save her ADA or NYSHRL claims because '[e]ven where the employer is required to engage in an interactive process, an employee may not recover based on her employer's failure to engage in an interactive process if she cannot show that a reasonable accommodation existed at the time of her dismissal.'" (quoting *Johnson v. L'Oreal USA*, No. 21-2914-CV, 2023 WL 2637456, at *6 (2d Cir. Mar. 27, 2023)); *Cousins v. Howell Corp.*, 113 F. Supp. 2d 262, 270-71 (D. Conn. 2000) ("Plaintiff has failed to suggest any accommodation that could have been offered by her employer in March, 1997, that would have made this possible. The ADA does not require employers to retain disabled employees who cannot perform the essential functions of their jobs with or without reasonable accommodation.").

Finally, because reasonable accommodations were not requested by Plaintiff as required by both the ADA and NYSHRL, Plaintiff cannot establish that any requested accommodations were refused by Defendants. *Dooley,* 636 F. App'x at 18 ("Dooley's claim therefore fails to satisfy the fourth prong, as an employer cannot refuse to make an accommodation . . . that it was never asked to make." (citation modified)); *Fasanello v.*

- 16 -

*United Nations Int'l Sch.*, No. 1:19-CV-5281-GHW, 2022 WL 861555, at *21 (S.D.N.Y. Mar. 23, 2022) ("However, while Defendant's alleged failure to hold a good faith constructive dialogue regarding Plaintiff's accommodation requests may suggest discriminatory intent, it does not preclude summary judgment on Plaintiff's failure to accommodate claim where, as here, there is no evidence that any of Plaintiff's accommodation requests were refused.").

In sum, Plaintiff has pointed to no evidence suggesting that she sought a reasonable accommodation that would have enabled her to perform the essential functions of her job, nor has she identified any such accommodation for this Court's consideration on the summary judgment motions or provided any evidence that any such accommodations were refused. As a result, her claim for a failure to accommodate is not cognizable under any of the relevant statutes. Accordingly, to the extent Plaintiff alleges a disability discrimination claim under the ADA, NYSHRL, or the City of Rochester Code, summary judgment in favor of Defendants is appropriate.

### B.    Retaliation Claim

Courts in the Second Circuit "analyze a retaliation claim under the ADA using the same framework employed in Title VII cases." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001). As such, "ADA retaliation claims are subject to the burden-shifting analysis established by the Supreme Court in *McDonnell Douglas*. . . ." *EEOC v. Day & Zimmerman NPS, Inc.*, 265 F. Supp. 3d 179, 199 (D. Conn. 2017). "Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision."

*Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002).  If the defendant can carry this burden, "the plaintiff must [then] point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation."  *Cifra v. G.E. Co.*, 252 F.3d 205, 216 (2d Cir. 2001); *see Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) ("Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination."). "The plaintiff 'has the ultimate burden of showing that the proffered reasons are a pretext for retaliation [under the ADA].'"  *Williams v. N.Y.C. Dep't of Health & Mental Hygiene*, 299 F. Supp. 3d 418, 427 (S.D.N.Y. 2018) (quoting *McDonald v. City of New York*, 786 F. Supp. 2d 588, 613 (E.D.N.Y. 2011)).  NYSHRL retaliation claims follow the same test. *Gahfi v. New York City Dep't of Educ.*, No. 23-CV-1782 (BMC), 2026 WL 141907, at *2 (E.D.N.Y. Jan. 20, 2026) ("Plaintiff's discrimination and retaliation claims, brought under Title VII, the ADA, the NYSHRL, or the NYCHRL, are analyzed under the three-step burden shifting framework set forth by the Supreme Court in [*McDonnell Douglas*].").

### 1. The Court Assumes, Without Deciding, That Plaintiff Has Established a *Prima Facie* Case of Retaliation

A *prima facie* case of retaliation requires a plaintiff to demonstrate that: "(1) she was engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012).  "The Supreme Court has held that in the context of a Title VII

retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "To prevail on a retaliation claim under the NYSHRL . . . , plaintiffs must show that they took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Moukdad,* 2026 WL 774270, at *9 (quoting *Ward v. Cohen Media Publications LLC*, No. 22-cv-6431 (JLR), 2023 WL 5353342, at *13 (S.D.N.Y. Aug. 21, 2023)).[5]

Plaintiff contends that her retaliation claim is based on her April 14, 2022 email, which she describes as a "formal complaint" about discrimination constituting protected activity. The email reads in relevant part[6]:

> 1.    I do not understand why a position change was brought up to me.
>     a.    In this email thread you said that we discussed the probationary period and that is why it was brought up to me, but that leaves me with more

---

[5]    The Rochester City Code states that "[i]t is unlawful for any person engaging in any activity to which this chapter applies to retaliate or otherwise discriminate against any person because he or she has opposed any practices forbidden under this chapter or because he or she has filed a complaint, testified or assisted in any proceeding under this chapter." City Code § 63-8. Much like Plaintiff's failure to accommodate claim, there is nothing before the Court to suggest that the Rochester City Code's provisions regarding retaliation are intended to be broader than those set forth in the ADA or NYSHRL, or that Plaintiff can pursue a claim under the Code where she has initiated this action on the same facts in this Court. The Court therefore will assess Plaintiff's claims only under the ADA and NYSHRL.

[6]    The presentation of the email, which was forwarded and contained information from other emails, creates some confusion as to the contents of the original email but the Court is of the impression that the quoted language was all drafted by Plaintiff in connection with this email.

questions. If this is the reason that the position change was brought up to me:

> i. Is there an issue with my performance or my work? If so, why has nothing been said to me prior to discussion about a position change? I have not heard anything negative from my supervisor, I haven't had any evaluations, and prior to the meeting Friday April 8, you and I had spoken for a total of less that 30 minutes and it was never about my performance.

    b.     In the meeting, in which I was not aware that you wanted to speak with me about anything, after we had spoken briefly about my topic, *you started off by saying that I shared with you that I have a disability that you won't disclose.* You went on to say that you need to know that your officers are going to show up, do the job, and that people are going to be safe. You went on to say that I should consider if this is a good position for me and provided me with other options, options that would significantly reduce my pay. *I asked if you were saying that I could not do my job because of my disability and your response was no, you are saying that I should consider if this position is a good fit for me.* I am paraphrasing your words, but Erice Cotton and Margaret Chatterton were present at the meeting per your request, for reasons I do not really understand, and they should be able to confirm this. You said that you didn't have much time, you asked if I had any questions to which I replied no, and you gave me the weekend to think about it and told me to have a decision on Monday.

. . .

    a.     As you can see, it was not made apparent to me that you wanted to speak with me as well. I was under the impression or belief that the 15 minutes would be for me to discuss the issue that I requested the meeting for, which is what I prepared myself to talk about. I was not prepared to have an important matter discussed. *I was not prepared to have to consider changing my position or career path for any reason, let alone processing the fact that it was my disability that was causing the conversation.*

. . .

    b.     This statement is also untrue. I know for a fact that Antoinette Davis called you that Saturday 4/2 and *said multiple times "She's artistic." I'm sure we both know what she meant to say though. This directly associates my one attendance blemish with my disability to you.*

. . .

    d.     I am also aware that a note I wrote to a coworker on that day, discussing my disability and what was happening was provided to my supervisor by Robert Richards as well. Something that he himself confirmed when I asked him about it. *Again, something else associating my disability with my absence and providing evidence that it is very likely that you knew about that, outside of me telling you.*

- 20 -

. . .

I no longer feel comfortable working in this security officer position. Between staff taking photos of me while I'm working, coworkers watching and reporting my movements and behaviors, coworkers inserting themselves into situations involving me and seemingly trying to sabotage my job, *and a hire up that feels that I cannot do my job because of my disability, this position is no longer one I want to be in.* However, seeing as how the 2 positions offered to me would drastically reduce my pay and cause undue hardship for me, I do not feel that I should be forced to choose one of those either. I have been placed in a very unfair and uncomfortable position at this job through no fault of my own and I would like resolution. I do not know what that is or what that looks like, but I would appreciate some ideas or options or something if that is possible.

(Dkt. 41-2 at 130-31 (emphasis added)). "Requests for accommodation and even informal complaints of discrimination qualify as protected activity under the ADA." *Pepe v. Cnty. of Suffolk*, No. CV 22-03058 (GRB)(AYS), 2025 WL 2549986, at *5 (E.D.N.Y. Sept. 4, 2025); *Flieger v. E. Suffolk BOCES,* 693 F. App'x 14, 18 (2d Cir. 2017) ("Activities protected by the ADA include complaints of ADA discrimination . . . and requests for reasonable accommodation."). Here, although disputed by Defendants who argue that only Plaintiff's communications in May could be considered protected activity, the Court concludes that Plaintiff's April 14 email arguably constituted protected activity as well. *Medina v. AAM 15 Mgmt. LLC*, 750 F. Supp. 3d 332, 351 (S.D.N.Y. 2024) ("For a complaint to constitute a protected activity, a plaintiff must [make the complaint] in sufficiently specific terms so that the employer is put on notice that the plaintiff believes he or she is being discriminated against . . . ." (citation modified)). Defendants were aware of the email from Plaintiff, and it is undisputed that she suffered a materially adverse action when she was terminated a month later, and therefore, Plaintiff has raised an inference that there was a causal connection between the protected activity and that adverse action.

*Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45-46 (2d Cir. 2025) (termination

constitutes adverse action under the ADA).

Accordingly, "[f]or the purposes of this motion, [the Court] will assume without

deciding that [P]laintiff has adequately established a *prima facie* case of retaliation."

*Fleming v. MaxMara USA, Inc.*, 644 F. Supp. 2d 247, 265 (E.D.N.Y. 2009), *aff'd*, 371 F.

App'x 115 (2d Cir. 2010); *see Pena-Barrero v. City of New York*, No. 14-CV-9550 (VEC),

2017 WL 1194477, at *19 (S.D.N.Y. Mar. 30, 2017) ("Assuming, without deciding, that

Plaintiff has established a prima facie case of retaliation, Defendants have provided

legitimate, non-discriminatory reasons for Plaintiff's termination. . . ."), *aff'd*, 726 F. App'x

31 (2d Cir. 2018).

### 2. Defendants have Provided Legitimate, Non-Retaliatory Reasons for Plaintiff's Alleged Adverse Actions, and Plaintiff Has Failed to Establish that These Reasons Were Pretextual

Defendants have submitted evidence that Plaintiff failed to satisfactorily complete

her probationary period.  Specifically, Plaintiff failed to report to work between April 25

through May 10 and provided no justification to Defendants for her absence during that

entire time period.  While Plaintiff contends that she was under the impression that the

doctor note she provided on April 21st gave her an indefinite absence, in fact, the letter

provided by her physician suggested that Plaintiff had an appointment the following day

and additional information would be provided thereafter.  (Dkt. 41-2 at 140).  Plaintiff does

not dispute that no further information was provided to Defendants and that she never

showed up at work until May 11 and thus, any misunderstanding she was operating under

does not negate the legitimacy of Defendants' reasons for her termination.  This satisfies

Defendants' burden at this step.  *See Jackson v. New York City Transit,* 348 F. App'x 666, 669 (2d Cir. 2009) (affirming conclusion that attendance record and two disciplinary suspensions were legitimate, non-retaliatory reason for plaintiff's non-promotion); *Murphy v. AutoZone, LLC*, No. 1:22-CV-00911 (OEM) (VMS), 2024 WL 3401199, at *10 (E.D.N.Y. July 12, 2024) (noting that "pattern of non-attendance provides a legitimate basis for Plaintiff's termination"); *Matsko v. New York*, 5:18-CV-857 (MAD/TWD), 2022 WL 137724, at *7, 11 (N.D.N.Y. Jan. 14, 2022) (unsatisfactory time and attendance, among other things, constitutes a legitimate, non-retaliatory reason for termination).

The Court now turns to the last step of the *McDonnell Douglas* test.  Plaintiff's ADA retaliation claims are subject to a but-for causation test.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015) (citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)).  "A plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action."  *Zann Kwan*, 737 F.3d at 846.  Pursuant to the NYSHRL, Plaintiff need only establish that "retaliatory animus 'was a motivating factor,' that is, that it played any role at all in the challenged conduct."  *Edelman*, 141 F.4th at 49.[7]

---

[7]    This Court has previously expressed uncertainty concerning the Second Circuit's view of the causation standard under the NYSHRL.  *See*, *e.g.*, *Van Brunt-Piehler v. Absolute Software, Inc.*, 744 F. Supp. 3d 277, 301 n.13 (W.D.N.Y. 2024), *appeal withdrawn*, No. 24-2474, 2025 WL 1066422 (2d Cir. Mar. 14, 2025).  But in *Edelman*, there is no uncertainty.  In any event, the applicable causation standard does not impact the resolution here.

Defendants contend that Plaintiff has introduced no evidence of pretext and the Court agrees. The undisputed evidence demonstrates that Plaintiff, a probationary employee, did not show up to work for over two weeks and did not attempt to contact Defendants during that time. Plaintiff concedes these facts and has not identified any statements attributable to Defendants that would corroborate an inference of retaliatory intent. In short, Plaintiff offers no evidence other than speculation to suggest that the reasons forming the basis for her termination were pretextual for retaliation due to her complaints of disability discrimination, which is insufficient to avoid summary judgment on either her ADA or NYSHRL claims. *Trane v. Northrop Grumman Corp.*, 94 F. Supp. 3d 367, 375 (E.D.N.Y. 2015) ("Conclusory allegations of discrimination are insufficient to show that a defendant's non-discriminatory reasons are pretexts and avoid summary judgment."), *aff'd*, 639 F. App'x 50 (2d Cir. 2016); *Verne v. N.Y.C. Dep't of Educ.*, 697 F. Supp. 3d 30, 47 (S.D.N.Y. 2023) ("Showing pretext requires more than simply some evidence"; it "instead requires sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action."); *see also Sivio v. Vill. Care Max,* 436 F. Supp. 3d 778, 802 (S.D.N.Y. 2020) ("[E]ven under the more relaxed NYCHRL standard, when Plaintiff's sole evidence of pretext is the temporal proximity between Plaintiff's complaints and Defendants' discipline, a NYCHRL retaliation claim cannot survive summary judgment if the employer has shown a non-retaliatory reason for the plaintiff's mistreatment"). For these reasons, Defendants are entitled to summary judgment on Plaintiff's retaliation claims.

In sum, when the evidence is viewed as a whole, the Court concludes that Defendants' motion for summary judgment should be granted and Plaintiff's motion denied.[8]

## CONCLUSION

For the foregoing reasons, Defendants' cross-motion for summary judgment (Dkt. 52) is granted, Plaintiff's motion for summary judgment (Dkt. 41) is denied, and Plaintiff's complaint is dismissed.  The Clerk of Court is directed to enter judgment in favor of Defendants and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  March 27, 2026
       Rochester, New York

---

[8]    Defendants also move for summary judgment to the extent Plaintiff asserts a hostile work environment claim.  No such claim has been alleged in Plaintiff's amended complaint, nor has such a claim been established on the papers before the Court and accordingly, the Court need not address the claim in detail.  *See Lascala v. Guidehouse, Inc.*, No. 25-CV-2882 (JPO), 2026 WL 787829, at *10 (S.D.N.Y. Mar. 20, 2026) ("To prevail on a hostile work environment claim under the ADA, LaScala must show '(1) that the harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer.' *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (cleaned up); *see also Peterson v. New York City Dep't of Educ.*, No. 18-CV-1515, 2020 WL 2559835, at *10 (E.D.N.Y. May 20, 2020) ("The elements of a hostile work environment claim are identical under the ADA and NYSHRL.")).